UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 00-6047-CR-HUCK(S)

NICHE BOX
FILED

OCT 1 6 2000

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

UNITED STATES OF AMERICA,    )
                             )
            Plaintiff,       )
                             )
v.                           )
                             )
JAMES BOOKER et al.          )
                             )
            Defendants.      )
_____)

GOVERNMENT'S TRIAL MEMORANDUM

Comes now The United States of America and hereby files its trial memorandum.

I. SUMMARY OF THE INDICTMENT

The gravamen of this indictment is a massive conspiracy composed of stevedores, security guards and drug suppliers to smuggle narcotics through Port Everglades. The indictment focuses on the actions of the stevedores and their associates who abused their positions of employment at Port Everglades to enrich themselves through the illegal international commerce in narcotics. This is the third trial directly related to narcotics smuggling through Port Everglades.

II. SUMMARY OF THE CASE

The Government's evidence will establish the existence of the conspiracy and the criminal responsibility of the defendants charged in the indictment. This will be established through the

use of court authorized electronic surveillance, the testimony of cooperating witnesses and documentary evidence, e.g., telephone toll records that corroborate the testimony of the cooperating defendants.

The United States obtained court authorization to conduct electronic surveillance over the cellular telephone used by Cecil McCleod. The cellular telephone used by McCleod, a leader of a crew of stevedore-smugglers, was the subject of court authorized electronic surveillance from May 17, 1997 through June 16, 1997.[1] Following his indictment, McCleod agreed to cooperate with the United States and he will be one of the primary witlessness in this case.

This case involves five defendants: James Booker, Jarrod Knight, Sean Dixon, Donnell Boks, and Earnest Archie. James Booker is clearly the most culpable of the five defendants and was involved in removing numerous loads of cocaine and marijuana from Port Everglades. Booker worked closely with Cecil McCleod, who is now a cooperating witness, in the illegal importation of drugs through Port Everglades. Sean Dixon, who was a close associate of Booker, assisted Booker in the importation of drugs through the Port.

---

[1] There was additional electronic surveillance conducted in the overall investigation, however, the United States will be introducing evidence only from this one month time period in the instant prosecution.

Jarrod Knight acted as the broker of several cocaine shipments that were owned by Enrique Wong and Dallas Aguilar, who were previously convicted. Wong or Aguilar would give Knight the number of the shipping container in which the cocaine was located. Knight would then contact Cecil McCleod to facilitate the removal of the drugs. Booker, Dixon and others then assisted in the removal of the drugs. Dixon would act as a look out and conduct counter surveillance to determine if the conspirators were under observation by law enforcement officers. Dixon was less culpable than Booker, and would be paid by Booker.

In addition to the smuggling of cocaine, the conspirators smuggled marijuana through Port Everglades. Some of these marijuana loads were brokered by Donnel Boks. Boks sought the assistance of McCleod, and McCleod would use James Booker, Earnest Archie and others to smuggle in the narcotics.

There have been over 30 dock workers and their associates convicted in this series of prosecutions. In describing the evidence, the cooperating witnesses will refer to other defendants in order to place the actions of the conspiracy into its proper context.

III. <u>STATEMENT OF THE LAW CONCERNING EVIDENTIARY ISSUES</u>

1. <u>Foundation of Recorded Conversations</u>

The United States will be offering into evidence numerous conversations that were either intercepted pursuant to Court

3

authorized electronic surveillance or were recorded by a cooperating witness.   The admissibility of such evidence is governed by well established precedent.

2.   Admissibility of Tape Recordings

a.   Authenticity

The Fifth Circuit, in United States v. Biggins, 551 F.2d 64, 66 (5th Cir. 1977), established a controlling criteria that the government must satisfy before introducing sound recording evidence.[2]  Specifically, Biggins requires, as a general rule, that the government[3] must provide proof regarding the competency of the operator, the fidelity of the recording equipment, the absence of material deletions, additions, or alterations in the relevant portions of the recording and the identification of the relevant speakers.  Id.  However, Biggins instructs that if the trial court

---

[2]    In developing these criteria, the Court declined to adopt the stringent test established by the Eighth Circuit in United States v. McMillan, 508 F.2d 101, 104 (8th Cir. 1974), cert. denied, 421 U.S. 916 (1975).

[3]    The Biggins court found that the burden of establishing this criteria was appropriately placed on the government, in part, because a defendant "will often hear the tape recording for the first time in court."  Id.  By contrast, in the current case, the defendants have had access to the recordings for almost two years and have had ample opportunity to review all of the recorded evidence that will be offered at trial.  Moreover, courts have implied that the Biggins foundation should be relaxed where the party opposing the admission of the tapes does not make a well founded accusation of impropriety or inaccuracy.  See, e.g., United States v. Shabazz, 724 F.2d 1536, 1539 (11th Cir. 1984); Louis Vuitton v. Spencer Handbags Corp., 765 F.2d 966, 974 (2d Cir. 1985).

4

independently determines that a particular recording accurately reproduces the auditory evidence, then the court has the discretion to admit it without a "formalistic adherence to the standard [established by the Fifth Circuit]." Id. at 67.

Both direct and circumstantial evidence may be used to determine the accuracy of the tape recordings. See United States v. Bright, 630 F.2d 804 (5th Cir. 1980). The government is not required to establish to an absolute certainty that the recording has not been changed but instead is obliged to show only that there is a reasonable probability that the tape has not been altered. Id. at 819, citing United States v. Haldeman, 559 F.2d 31 (D.C. Cir. 1976), cert. denied, 431 U.S. 933 (1977). Accord United States v. Shabazz, 724 F.2d 1536, 1539 (11th Cir. 1984). Where the government establishes, through testimony, that the offered recordings are actual reproductions of conversations that have occurred, it is not required to prove chain of custody. See United States v. McCowan, 706 F.2d 863 (8th Cir. 1983), citing United States v. Derring, 592 F.2d 1003 (8th cir. 1979); United States v. Mahone, 537 F.2d 922, 930 (7th Cir.), cert. denied, 429 U.S. 1025 (1976).

The authenticity of the recording may be established by a witness testifying that the tape accurately depicts the conversations recorded. The authenticating witness need not necessarily be someone who participated in or personally overheard

5

the subject matter of the recording. See <u>United States v. Rengifo</u>, 789 F.2d 975, 978 (1st Cir. 1986); <u>United States v. Fuentes</u>, 563 F.2d 527, 532 (2d Cir.), <u>cert</u>. <u>denied</u>, 434 U.S. 959 (1977). Instead, circumstantial evidence may be sufficient to authenticate the conversation. See <u>Rengifo</u>, 789 at 978; <u>United States v. Cortelleso</u>, 663 F.2d 361, 364 (1st Cir. 1981), <u>cert</u>. <u>denied</u>, 444 U.S. 1072 (1980); <u>United States v. Millan</u>, 817 F. Supp. 1072 (S.D.N.Y. 1993). The first Circuit, in <u>Rengifo</u>, noted that a sufficient foundation for the admission of recorded conversations was established when the government offered a witness who, although he had not heard or participated in the recorded conversations, had supervised the wiretap from the day it was authorized and was able to provide a detailed and particular knowledge of the interception procedures used and the activities of the agent who manned the listening post. See <u>Rengifo</u>, 789 F.2d at 978-79.

Voice identifications also may be satisfied by direct or circumstantial evidence. To establish the identity of the relevant speakers, a witness' familiarity with the voice sought to be identified is sufficient to ensure the reliability of the identification. The witness may have developed familiarity with the voice either before or after the time of the recording. See <u>Biggins</u>, 551 F.2d at 68, citing Fed.R.Ev. 901(b)(5). Courts have upheld voice identifications made through a variety of methods as exemplified by the Ninth Circuit in <u>United States v. Scully</u>, 546

6

F.2d 255 (9th Cir. 1976), cert. denied, 430 U.S. 970 (1977).

In Scully, the Ninth Circuit upheld the government's authentication foundation over the appellant's contention that the government failed to produce sufficient evidence to identify the six speakers in the conversations. Id. These identifications resulted from a variety of means. An agent identified two of the voices based on his personal conversations with the individuals involved as well as his hearing them speak on other occasions. Id. at 270. A third voice was identified by an agent who compared the voice to the voice as played on a tape which was previously authenticated. Id. Circumstantial evidence was used to authenticate the three other voices[4]. Id. The Ninth Circuit upheld all methods of authentication used by the government. Id.

Similarly a "telephone conversation may be shown to have emanated from a particular person by virtue of its disclosing knowledge of facts known peculiarly to him." See Advisory Committee notes to Rule 901(b)(4). Courts have endorsed authentication of speakers based upon evidence of the context and timing of a call or the speaker's response in a manner expected due

---

[4]     The voice of the appellant George Cabral was authenticated by evidence that a person who identified himself as "George" on the tape used a telephone located at the residence where George Cabral lived. Id. at 270. The voices of appellants Steven Sanchez and Terrance Macedo were authenticated by testimony that persons who identified themselves as "Steve" or "Terry" made or received calls from residence where Sanchez and Macedo lived, respectfully. Id.

to an earlier communication. See e.g., <u>United States v. Espinoza</u>, 641 F.2d 153, 170 (4th Cir.) (approval of the use of circumstantial evidence[4] "to identify [the defendant] as the person" with whom a witness had spoken on the telephone regarding an order for "kiddie porn"), <u>cert</u>. <u>denied</u>, 454 U.S. 841 (1981).

Finally, in the <u>Biggins</u> analysis, to establish the competency of the operator and the fidelity of the recording equipment, the fact that the recording was successfully made will suffice. See <u>McCowan</u>, 706 F.2d at 863. After the government establishes the proper <u>Biggins</u> foundation for the admissibility of the recordings, the defendant has the burden of rebutting that foundation. See <u>United States v. Sarro</u>, 742 F.2d 1286, 1292 (11th Cir. 1984), citing <u>United States v. DeLaFuente</u>, 548 F.2d 528, 533-34 (5th Cir.), <u>cert</u>. <u>denied</u>, 434 U.S. 932 (1977).

In the current case, the government will be offering duplicated recordings of the original taped conversations. Where the government establishes through testimony that the duplicate recordings are exact recordings of conversations contained in the original tapes, they are admissible. See <u>United States v. DiMatteo</u>, 716 F.2d 1361, 1368 (11th Cir. 1983), <u>cert</u>. <u>denied</u>, 469 U.S. 1101 (1985). The burden of raising a genuine issue as to the

---

[4]     The shipping of the "kiddie porn" to the witness, and the fingerprint of the defendant on the invoice compelled the court to support the identification of the defendant's voice in the district court. <u>Id</u>.

8

authenticity of the originals is on the party opposing admission. Id., citing United States v. Georgalis, 631 F.2d 1199, 1205 (5th Cir. 1980). See also United States v. Whitaker, 372 F. Supp. 154 (M.D. Pa. 1974) (finding summary tapes of wiretap conversations admissible where the defendants failed to show inaccuracy), affirmed, 503 F.2d 1400 (3rd Cir. 1974), cert. denied, 419 U.S. 1133 (1975); United States v. Riccobene, 320 F. Supp. 196 (E.D.Pa. 1970) (copies of tape recordings admissible where defendants failed to show inaccuracy), affirmed, 451 F.2d 586 (3d Cir. 1971). Testimony that a copy of a recording accurately reflects the conversation will suffice to overcome a non-specific objection based on the fact that a duplicate, and not the original, is being introduced. See DiMatteo, 716 F.2d at 1368.

    b.   Audibility

Another criterion for admission is that the tapes be sufficiently audible and comprehensible for the jury to consider their contents. See United States v. Slade, 627 F.2d 293, 301 (D.C. Cir.), cert. denied, 449 U.S. 1034 (1980). For example, gaps or inaudible portions do not constitute a bar to admissibility unless they are so substantial as to render the entire recording untrustworthy. See United States v. Lively, 803 F.2d 1124, 1129 (11th Cir. 1986). See also United States v. Llinas, 603 F.2d 506, 508 (5th Cir. 1979), cert. denied, 444 U.S. 1079 (1980). Inaudibility goes to the weight rather than the admissibility of

audiotapes.    United States v. Vega, 860 F.2d 779, 790 (7th Cir. 1988).

The trial court has broad discretion in determining whether to allow an imperfect recording into evidence. In United States v. Harrell, 788 F.2d 1524 (11th Cir. 1986), the appellants challenged the trial court's refusal to omit certain tapes from evidence based on imperfections on the tapes. The court upheld the admission of the tapes into evidence in spite of the imperfections where the trial court fully satisfied the authenticated requirements set forth in Biggins. Id. at 1527.

In United States v. Wilson, 578 F.2d 67, 69 (5th Cir. 1978), the Fifth Circuit noted the standard to be applied in cases in which problems of tape unintelligibility exist:

> Tape recordings which are only partially unintelligible are admissible unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy. The initial decision whether to admit into evidence a recording containing inaudible or unintelligible portions is committed to the sound discretion of the trial court. Here, the district court listened to the tape and recognized that some of the conversation was not intelligible, but found that a sufficient portion was understandable and had enough probative value to warrant its admission. After carefully listening to the tape, we agree with the district court's decision to admit the tape. While some portions of the recording are inaudible and unintelligible, much of it can be heard clearly. Certainly, defendants have not shown an abuse of the district court's discretion.

The court in United States v. Bynum, 567 F.2d 1167 (1st Cir. 1978), also deferred to the trial court's discretion in admitting an imperfect videotape of a bank robbery. The appellant argued

that the film was so hazy as to be useless to the jury. On review, the Bynum court noted that the determination of whether a videotape is sufficiently clear to be admitted in evidence was a matter properly within the trial court's discretion and found no abuse in the decision to admit the videotape. Id. at 1171.

In United States v. Robinson, 763 F.2d 778 (6th Cir. 1985), the appellants challenged the trial court's admission into evidence of partially inaudible recordings of conversations which occurred in a defendant's judicial chambers. The court upheld the admission of the tapes into evidence despite the background noises which rendered portions of the tape recordings inaudible. Id.

Given the inherent difficulties in the ability of recording equipment to produce flawless recordings, courts will allow a party offering taped evidence to use certain techniques designed to improve clarity. Filtering a tape to improve audibility and comprehension is no bar to admissibility. See Slade, 627 F.2d at 301; United States v. Criag, 73 F.2d 455, 477-79 (7th Cir. 1977). Audibility is often affected by background noise, accents and speaking speeds of the speakers, deafness of the listener, slang, weather conditions, etc. Filtering, use of earphones and/or use of transcripts are all acceptable ways to improve audibility and/or comprehension. See Haldeman, 559 F.2d at 54, n. 15; United States v. Bryant, 480 F.2d 785, 790 (2d Cir. 1973); Fountain v. United States, 384 F.2d 624, 631 (5th Cir. 1967), cert. denied, 390 U.S.

11

1005 (1968).  Finally, if by using a transcript a person is better able to hear and understand the conversation, then the tape's audibility has been established.  See United States v. Kirk, 534 F.2d 1262, 1276-77 (8th Cir. 1976), cert. denied, 430 U.S. 906 (1977).

In summary, while an audio or video recording offered into evidence must be sufficiently clear and comprehensible to the jury in order to be admissible, imperfections alone will not justify exclusion.  Moreover, clarity enhancing techniques will be allowed so long as they do not rise to the level of material manipulations.

### 3.   Transcripts of Conversations

The government intends to offer into evidence transcripts which correspond to the recordings it will also offer into evidence.  Because the transcripts satisfy the Fifth Circuit's requirements for admissibility, they should be admitted during the course of the trial to assist the trier of fact.  In this case, we have agreed to use some of the transcripts prepared under the direction of counsel for defendant Booker.  Booker is the only defendant to have objected to the accuracy of the government's transcripts.

In the seminal case of United States v. Onari, 535 F.2d 938 (5th Cir. 1976), the Fifth Circuit set forth guidelines for admission of transcripts as aids to the jury during the playing of tape recordings.  The Onari court instructed that the trial court

12

should first attempt to devise a "stipulated" transcript to which all parties can agree, preferably at a pre-trial conference. If no "official" transcript can be produced, then each side should be allowed to admit its own version of a transcript, for consideration by the jury as a matter of contested fact. In such an event, each party would be allowed to present evidence supporting the accuracy of its version. Id. at 949. Where, as here, the government has produced transcripts of tape recordings, it is each defendant's burden to challenge the accuracy of those transcripts by presenting the Court with his own version. See United States v. Cruz, 765 F.2d 1020 (11th Cir. 1985). His failure to do so precludes his objecting to the accuracy of the government's versions. Id.; See also, United States v. Rosenthal, 793 F.2d 1214 (11th Cir. 1986), cert. denied, 480 U.S. 919 (1987); United States v. Llinas, 603 F.2d 506 (5th Cir. 1979), cert. denied, 444 U.S. 1079 (1980); United States v. Wilson, 578 F.2d 67 (5th Cir. 1978).

In the instant case, only the defendant Booker has produced alternative transcripts, and as noted above, the government has agreed (with one minor modification) to use his version of the transcripts.

The government may offer into evidence redacted versions of the transcripts and recordings in this matter in order to shorten the trial and reduce the jury's exposure to irrelevant and unnecessary material. This plan is consistent with the Second

13

Circuit's recognition that the government "is not required to play tapes in their entirety if the omitted portions are not necessary to clarify, or make not misleading, that which is introduced." See United States v. Weisman, 624 F.2d 1118, 1128 (2d Cir.), cert. denied, 449 U.S. 871 (1980). Plainly stated, the government is not required to introduce portions of a statement which are irrelevant or do not explain passages admitted into evidence. In the face of an objection under the doctrine of completeness, Fed.R.Evid. 106, the only portions which the defendant may properly seek to have admitted are those which must be relevant to the issues and then should be allowed only those parts which qualify to explain the subject matter of the portion offered by the government. United States v. Sweiss, 814 F.2d 1208, 1211 (7th Cir. 1986); United States v. Walker, 652 F.2d 708, 710 (7th Cir. 1981). Rule 106 "permits introduction only of additional material that is relevant and is necessary to qualify, explain or place into context the portion that was already introduced." See United States v. Pendas-Martinez, 845 F.2d 938 (11th Cir. 1988). As any redactions offered by the government are not violative of Rule 106 and are designed to save the time of the Court and the jury, the government respectfully requests that the Court permit their admission into evidence.

The United States will not only rely on and refer to these transcripts during its presentation of evidence, but will also seek

14

to introduce them as exhibits. It is well-settled that transcripts of conversations may be used as substantive evidence to aid the jury in determining the real issues presented, specifically, the content and the meaning of the tape recordings. United States v. Cruz, 765 F.2d 1020, 1023 (11th Cir. 1985); (citing United States v. Onori, 535 F.2d 938, 947 (5th Cir. 1976)). Transcripts are admissible because they make the tapes understandable and accessible to the jury; moreover, without the transcripts, the jury would be without tools which are essential to their understanding and evaluation the case.

### 4.    Co-conspirator Statements are Admissible

The United States intends to introduce numerous recorded and unrecorded conversations during its case-in-chief in which the conspirators roles in the narcotics conspiracy are discussed. Although all the defendants do not participate in these conversations, the hearsay declarants frequently refer to defendants not present and discus the roles of the absent conspirators and their responsibilities in the overall conspiracy. In these discussions, the conspirators refer to the actions of each other. As noted in the Summary of the Case Section, the electronic surveillance orders were secured for telephones used by the defendant Cecil McCleod who has entered a guilty plea. In those conversations, Cecil McCleod discuss the actions of other conspirators as well as themselves. These conversations are

15

admissible against <u>all</u> members of the conspiracy--not just those who were participants in the conversation.

The United States submits that the recorded and unrecorded conversations are admissible under the provisions of Federal Rule of Evidence 801(d)(2)(E). Rule 801(d)(2)(E) provides that all statements made during the course and in furtherance of a conspiracy are admissible into evidence. Co-conspirator statements are not considered hearsay and are, therefore, admissible in evidence.

In order for statements to be admissible under Rule 801(d)(2)(E), the United States must show by a preponderance of the evidence that: (1) a conspiracy existed; (2) both the declarant and the person against whom the statements are offered were members of the conspiracy; (3) the statements were made during the scope of the conspiracy; and (4) the statements were made in furtherance thereof. <u>Bourjaily v. United States</u>, 483 U.S. 171, 175 (1987).

In determining whether a conspiracy existed, the court may consider the hearsay declarant's statements themselves. <u>Bourjaily</u>, 483 U.S. at 1819. The defendant need not be party to the conversation for the recording to be admissible; the declaration of one co-conspirator is admissible against all other members of the conspiracy. <u>United States v. Tombrello</u>, 666 F.2d 485, 491 (11th Cir.), <u>cert</u>. <u>denied</u>, 456 U.S. 994 (1982); <u>United States v. Lampley</u>, 68 F.3d 1296, 1301 (11th Cir. 1995) (co-conspirator statement

admissible even though defendant was not a member of the conspiracy at the time statement was made.)

The Eleventh Circuit applies "a liberal standard in determining whether a statement is made in furtherance of a conspiracy." United States v. Santiago, 837 F.2d 1545, 1549 (11th Cir. 1988). The statement need not be necessary to the conspiracy, but must only further the interest of the conspiracy in some manner. In Santiago, the Court concluded that "boasts and other conversations maybe in furtherance of a conspiracy if such statements are used to obtain the confidence or to allay the suspicions of a co-conspirator." 837 F.2d at 1549.

In this case, many of the conversations include co-conspirators who are presently government witnesses. Specifically, the United States will seek to introduce conversations that Cecil McCleod had with other members of the conspiracy. Although Cecil McCleod is now a government witnesses he was not cooperating at the time the conversations were recorded. These conversations were made to further the conspiracy in that it was critical to the conspiracy that its members be aware of certain illegal activities of other conspirators. Just as information is critical in a legal business venture, information about the illegal activities of the conspiracy was crucial to its overall operation.

As noted previously, the defendant against whom the conversation is sought to be admitted is not always a party to the

recorded conversations. The statements themselves and independent evidence, e.g., admissions made by the remaining defendants and others will establish that a conspiracy existed and that all the remaining defendants were members of the conspiracy. Cooperating witnesses Cecil McCleod, Lionel Welch, Andrew Rodney, Anthony Spence and others will testify regarding the existence and structure of the conspiracy. These witnesses will establish the existence of the conspiracy.

In addition, the United States may seek to introduce various consensual conversations of defendants and other conspirators made by cooperating witnesses. The Eleventh Circuit has recognized that an informant's statements are admissible not for the truth of the matter asserted, but for the purpose of placing a conspirator's comments in context for the jury. United States v. Byrom, 910 F.3d 725, 734-37 (11th Cir. 1990); United States v. Price, 792 F.2d 994, 997 (11th Cir.1986). Other circuits have permitted the admission of such statements for the purpose of making responses intelligible for the jury as well as making them recognizable as adoptive admissions. See, e.g., United States v. Gutierrez-Chavez, 842 F.2d 77, 81 (5th Cir.1988); United States v. Lemonakis, 485 F.2d 941, 948-49 (D.C. Cir.1973), cert. denied, 415 U.S. 989, 94 S.Ct. 1587, 39 L.Ed.2d 885 (1974).

In some instances, the United States may seek to introduce conversations which were recorded after the declarant (co-

conspirator) was arrested for his related criminal involvement. The Eleventh Circuit has addressed this issue and affirmed the admission of similar recordings. In <u>United States v. Jones</u>, 913 F.2d 1552, 1563 (11th Cir. 1991), the defendant Minyard challenged the admission into evidence of a tape-recorded telephone conversation between two of his co-defendants (Jones and Ivester) which were obtained after Jones had been arrested and which contained statements incriminating Minyard. Minyard claimed that the tape should not have been admitted as recorded coconspirator statements under Fed.R.Evid. 801(d)(2)(E) because the statements on the tape were not made during and in furtherance of the conspiracy and therefore constituted inadmissible hearsay. The court rejected the defendant's claim and noted that the relationship between the declarant and the accused was the critical inquiry -- not the relationship between the declarant and the informant. <u>United States v. Jones</u>, 913 F.2d at 1563. Citing <u>Bourjaily</u> and its Eleventh Circuit progeny, the Court determined that the statement was made during the course and in furtherance of the conspiracy even though one of the speakers had already been arrested for crimes committed during the course of the conspiracy.

    5.   <u>Records Seized From Defendants</u>

There are numerous ways to authenticate a document. Federal Rule of Evidence 901 specifies that the authenticity of a document may be established by "evidence sufficient to support a finding

that the matter in question is what its proponent claims." Fed. R. Evid. 901 (a). This requirement may be satisfied by the testimony of a witness with knowledge that a matter is what it is claimed to be. Fed. R. Evid. 901(b)(1). In determining the authenticity of evidence, the court is not bound by the rules of evidence, and consequently, it may consider hearsay and other evidence in ruling on the admissibility of documentary evidence. See United States v. Bourjaily, 483 U.S. at 178 (the rules of evidence do not govern the Court's determination of the admissibility of evidence); Fed. R. Evid. 104(a)("In making its determination it [the court] is not bound by the rules of evidence except those with respect to privileges." It is well settled that "the government may authenticate a document solely through the use of circumstantial evidence, including the document's own distinctive characteristics and the circumstances surrounding its discovery." United States v. Smith, 918 F.2d 1501, 1509 (11th Cir. 1990); United States v. Elkins, 885 F.2d 775, 785 (11th Cir. 1989), cert denied, 494 U.S. 1005 (1990).

### 6.    Charts And Summaries Under Evidence Rule 1006

The United States will offer into evidence charts that summarize various telephone toll records indicating telephone calls but were various members of the conspiracy.[5]

---

[5]    The underlying materials have long been in the possession of defense counsel, and copies of the summary charts were provided to counsel via federal express sent on May 28, 1999.

The United States relies on Federal Rule of Evidence 1006, which provides that "The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." In cases where the amount of information and related documents are voluminous, the admission of summaries "offers the only practicable means of making their contents available to the jury." See Notes of Advisory Committee to Rule 1006; see also United States v. Harmas, 974 F.2d 1262, 1269 (11th Cir.1992). The Eleventh Circuit has affirmed the government's use of telephone summary charts in a narcotics conspiracy case. United States v. Daniels, 986 F.2d 451, 455 (11th Cir. 1993). As in Daniels, the charts in this case will summarize telephone contacts between the members of the conspiracy at or around the time of known importations or seizures of narcotics at Port Everglades.

### 7. Plea Agreements

The United States anticipates that the testifying cooperating defendants will be impeached on cross-examination or in opening statement  by defense counsel. Accordingly, the plea agreements are admissible evidence on re-direct examination or in direct examination if defense counsel impeaches the credibility of the cooperating defendant in opening statement. United States v. Knowles, 66 F.3d 1146, 1160(11th Cir. 1995) (collecting cases).

### 8. Prior Consistent Statements

21

The United states anticipates that defense counsel will seek to impeach the credibility of the cooperating witnesses by prior inconsistent statements. If this occurs, the United States will seek to rehabilitate the witness through the use of prior consistent statements. In this regard, it is important to note that the United States will frequently not be seeking to introduce the prior consistent statement as substantive evidence under Fed R. Evid. 801(d)(1)(B). Instead, the United States may seek to use the prior consistent statement under well established case law that permits a prior consistent statement to be admitted for the limited purpose of rehabilitating the witness by clarifying and explaining the alleged inconsistent statement. This limited use of prior consistent statements is permitted even if the statement does not qualify as substantive evidence under Fed. R. Evid. 801(d)(1)(B). United States v. Ellis, 121 F.3d 908, 919-921 (4th Cir. 1997) (trial court properly admitted record of witnesses FBI interview for rehabilitation after defendant challenged her credibility on cross examination). Accord, United States v. Castillo, 14 F.3d 802, 805-806 (2d Cir. 1994); United States v. Casoni, 950 F.2d 893, 905 (3d Cir. 1991); United States v. Harris, 761 F.2d 394, 39-400 (7th cir. 1985). See also Weinstein's Federal Evidence § 803.12[1], pp. 801-28 through 801-29 (1998) (Collecting cases) .

9. Witness Statements

In this case, many cooperating defendants were interviewed by

law enforcement agents. These interviews were reduced to Reports of Interview (ROI). These documents do not contain verbatim statements of the person being interviewed, but are rather summaries of what the witness said based on the rough notes of the agent.

It is well settled that such reports do not constitute witness statements under 18 U.S.C. § 3500 or Fed. R. Crim. Pro. 26.2. Because these reports are not the statement of the witness their production is disfavored because they "would threaten the witness with impeachment on the basis of statements that they did not make." United States v. Judon, 581 F.2d 553, 555 (5th Cir. 1977). Indeed, in United States Martinez, 87 F.3d 731 (5th cir. 1996), the district court ordered the government to produce an agents report of what a witness had told the agent. The government resisted production and perfected a pre-trial appeal of the court's decision. 87 F.3d at 734. The Court reversed and reaffirmed its holding in Judon that reports of interviews by agents do not constitute Jencks Act material. Thus the holding in Judon remains valid and the United States is not obligated to disclose agent summary reports of witness interviews. United States v. Martinez 87 F.3d at 739.

Similarly, such reports of interview need not be disclosed if the agent testifies about a subject matter not covered in the report, e.g., the foundation evidence for a tape recording or the

recovery of a document not discussed in a report. This is the case, because the Jencks Act requires only that a statement be disclosed if it "relates to the subject matter concerning which the witnesses has testified." Fed. R. Crim. Pro. 26.2 <u>United States v. Keller</u> 512 F.2d 182 (3d Cir. 1975)( where first two pages of police officers report were outside the purview of his direct testimony defense counsel was not entitled to discovery of such pages under the Jencks Act) See C. Wright <u>Federal Practice and Procedure</u> §437 at note 37 (1982 & 1990 Supp) (collecting cases).

However, in light of the Court's decision <u>Kyles v. Whitley</u>, 115 S.Ct. 1555, 1567 (1995) concerning the exculpatory nature of directly contradictory witness statements and to avoid lengthy <u>in camera</u> review, the United States will <u>voluntarily</u> provide redacted portions of agent summaries of witnesses interviews that relate directly to the testimony of the witness concerning the defendants presently on trial. This production is <u>voluntary</u> and should not be construed as a waiver of the government's position that the reports need not be disclosed to defense counsel.

10. <u>Drug Deals in Furtherance of the Conspiracy</u>

The conspiracy charge in this case extends from on or about January 1, 1995 up to and including the date of the return of the indictment. Consequently, any narcotics importation or distribution conducted by the defendants during this time period is direct evidence of the existence of the narcotics conspiracy and is

24

not similar act evidence. Criminal acts done in furtherance of the conspiracy are not other crime evidence, but rather are direct evidence of the conspiracy itself. <u>United States v. Wells</u>, 995 F.2d 189, 191 (11th Cir. 1993); <u>United States v. Montes-Cardenas</u>, 746 F.2d 771, 780 (11th Cir. 1984); <u>United States v. Weeks</u>, 716 F.2d 830, 832 (11th Cir. 1983); See Also, 2 <u>Weinstein's Federal Evidence</u>, § 404.22[5], pp. 404-116 at n. 66 (2000)(collecting cases).

### 11. Similar Act Evidence

The United states does intend to offer evidence of other drug deals conducted by defendants Booker and Dixon that are arguably part of another conspiracy. These drug deals involve the smuggling of narcotics through Port Everglades by Booker and Dixon with Willie Jackson and Lionel "Ron" Welch. It is the government's position that there was on over arching conspiracy to smuggle drugs through Port Everglades. However, because Jackson and Welch sometimes competed with McCleod, it may be appropriate to analyze the narcotics transactions undertaken by Booker and Dixon with Jackson and Welch as if they were other crime evidence. These crimes were undertaken <u>at the same time</u> as the charged crimes and thus are clearly admissible under well established Eleventh Circuit precedent.

The admissibility of other crimes evidence is governed by Federal Rule of Evidence 404(b) which adopts an " inclusionary

approach generally providing for the admission of all evidence of other acts that is relevant to an issue at trial, excepting only evidence offered to prove criminal propensity." 2 Weinstein's Federal Evidence, § 404.20[3] (2000)(collecting cases).   Thus, other crime evidence is admissible to prove intent, preparation, plan, motive, knowledge, identity or absence of mistake or accident. Fed. R. Evid. 404(b).   Booker's and Dixon's drug smuggling activities through Port Everglades activities with Jackson and Welch are admissible to show all these things.

The evidence that Booker and Dixon engaged in other drug transactions with Welch and Jackson through Port Everglades, at the time of the charged offense, is directly relevant to the defendants' intent and plan to smuggle drugs through Port Everglades with McCleod and the persons named as defendants in the instant conspiracy charge. United States v. Maxwell, 34 F.3d 1006, 1009 (11th Cir. 1994)(uncharged drug activity admissible to show intent in prosecution for conspiracy to distribute drugs); United States v. Beasley, 2 F.3d 1551, 1557 (11th Cir. 1993), cert. denied, 510 U.S. 1240 (1994)(defendant's past purchases of cocaine admissible in cocaine conspiracy prosecution); United States v. Stubbs, 944 F.2d 828, 935-36 (11th Cir. 1991)(evidence that defendant supported herself by selling marijuana admissible in cocaine distribution prosecution as probative of intent); United States v. Elliot, 849 F.2d 554, 558 (11th Cir. 1988) (evidence of

prior drug dealings by the defendant charged with conspiracy to distribute drugs relevant to motive, intent and identity).

Consequently, the testimony of Welch concerning the drug activities of Booker and Dixon should be admitted. Moreover, this testimony is crucial to the government's case in that it corroborates the testimony of other cooperating witnesses, whose testimony will be strongly attacked by defense counsel on cross-examination. Any unfair prejudice to the defendants may be appropriately addressed by a limiting instruction.[6]

IV CONCLUSION

The United states will brief any other issue of concern to the Court as it arises during the course of the trial.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

BY: _Michael J. Dittoe_
MICHAEL J. DITTOE
Assistant United States Attorney
Court ID #A5500209
500 E. Broward Blvd., Ste. 700
Ft. Lauderdale, FL 33394-3002
Tel: (954) 356-7392
Fax: (954) 356-7230

---

[6] See Eleventh Circuit Pattern Jury Instruction, Special Instruction Number 4, Similar Act evidence, pp.51 (1987).

27

## CERTIFICATE OF SERVICE

1.  Gary Rosenberg, Esq.
    255 Alhambra Circle
    Suite 425
    Miami, FL 33134

2.  Scott Sakin, Esq.
    1411 Northwest N. River Drive
    Miami, FL 33125

3.  Phillip Horowitz, Esq.
    12651 S. Dixie Highway
    Suite 328
    Miami, FL 33156

4.  Joel Robrish, Esq.
    One Datran Center
    Suite 400
    9100 S. Dadeland Blvd.
    Miami, FL 33156

5.  Harold Keefe, Esq.
    19220 Oakmont Drive
    Hialeah, FL 33015

Michael J. Dittoe
Assistant United States Attorney